CAROLAN v. SOUTHERN PAC. CO. et al.

(Circuit Court, N. D. California. December 20, 1897.)

No. 12,511.

1. MASTER AND SERVANT—PERSONAL INJURY—ASSUMED RISK.
    A servant employed by a railroad company to assist in loading freight into its cars from a wharf cannot recover from his employer for an injury received in handling such freight, and due solely to the negligent manner in which the boxes to be loaded had been piled on the wharf by a connecting carrier, the danger being as obvious to the plaintiff as to the defendant.

2. SAME—UNSAFE PLACE TO WORK.
    The rule requiring a master to furnish his employé with a safe place to work has no application in an action by a servant of a railroad company employed in loading freight into its cars from a wharf, to recover for injuries resulting from the negligent manner in which the freight was piled on the wharf by a connecting carrier, where no defect in the wharf nor the appliances furnished by the master is alleged.

This is an action by Patrick Carolan against the Southern Pacific Company and the Pacific Mail Steamship Company to recover for personal injuries. The defendant railroad company demurs to the complaint.

Reddy, Campbell & Metson and Ira D. Orton, for plaintiff.
McGowan & Squires, for defendant Southern Pac. Co.
Ward McAllister, for defendant Pacific Mail S. S. Co.

HAWLEY, District Judge (orally). This action is brought by the plaintiff to recover damages for injuries alleged to have been received by him, by reason of the negligence of the defendants. The facts set out in the complaint are as follows: That on or about the 30th day of June, 1897, the Pacific Mail Steamship Company unloaded a large quantity of tea in boxes, and piled the same on its wharf in the Bay of San Francisco, in the city and county of San Francisco, near a track where the defendant Southern Pacific Company operated trains; that said tea was so piled in order that the same might be conveniently loaded by the said defendant Southern Pacific Company in its said cars; that said boxes of tea were piled by said defendant Pacific Mail Steamship Company from 14 to 16 feet high on said wharf, and were carelessly and negligently piled so as to easily fall and collapse when subjected to any weight or strain; that on and prior to said 30th day of June, 1897, the said plaintiff was employed by defendant Southern Pacific Company as a laborer to assist in loading merchandise into the cars of defendant from the wharf of said Pacific Mail Steamship Company, in said city and county of San Francisco; that on said 30th day of June, 1897, by direction of said defendant Southern Pacific Company, plaintiff was engaged in assisting to load a car of defendant with said tea contained in said boxes, piled as aforesaid upon said wharf; that, in the course of performing his duty of assisting to load said tea into said box cars, the plaintiff, by direction of defendant Southern Pacific Company, climbed on top of said boxes of tea, and was engaged in handing said boxes therefrom to other employés of the defendant; that, while he was so engaged, said pile of tea boxes collapsed, and precipitated the plaintiff about 12 or 14 feet to the floor of the wharf, causing him to be severely injured and bruised; that, by reason of being so precipitated, a bone of plaintiff's leg was fractured, and the skin and flesh thereof torn and lacerated, and he was hurt and bruised in other portions of his body, both internally and externally.

A party charging negligence as a ground of action must plead it. The complaint must show that the master, by his acts or by his omissions, has violated some duty incumbent upon him, which caused the injury complained of. The allegation of the complaint in this respect is:

"That said accident was caused solely by reason of the plaintiff being put to work on top of said tea boxes, which were carelessly and negligently piled in such a manner as to easily fall and collapse; that, by reason of said boxes of tea being so carelessly and negligently piled, the place where plaintiff was directed to work, and where he was working at the time of receiving the injuries aforesaid, was unsafe; that the unsafe condition thereof was unknown to plaintiff, but was known to defendants, or might have been known to them, and each of them, by the exercise of ordinary care."

There is no allegation that the plaintiff did not know, or he could have known by the exercise of ordinary care, the unsafe condition of the boxes of tea. It does not appear from the allegations

in the complaint that the injuries which the plaintiff received were caused by any defective or unsafe appliances furnished by the master. The Southern Pacific Company had nothing to do with the piling of the boxes of tea on the wharf, which, according to the theory of plaintiff, was the only thing which made the place unsafe. It is manifest, upon these facts, that the plaintiff is not entitled to recover, unless from other allegations of the complaint it clearly appears that the defendant failed in its duty to provide the plaintiff with a safe place in which to work, or failed to furnish him with safe appliances with which to perform his work. The Southern Pacific Company is not shown to have had any authority or duty to perform in piling the boxes. On the other hand, it is affirmatively shown that the injury which plaintiff received was not caused by any fault or negligence of the railroad company, but was occasioned by the handling and transportation of the boxes of tea in the performance of the work—usual and ordinary in its character—which the plaintiff was employed to do, and came within the risks of his employment, assumed by him at the time.

In Kohn v. McNulta, 147 U. S. 238, 241, 13 Sup. Ct. 298, where an employé of a railroad company was injured by having his arm crushed between the deadwoods while he was attempting to couple two freight cars, differing with his employer's cars in structure, the court said:

"It is not pretended that these cars were out of repair, or in a defective condition, but simply that they were constructed differently from the Wabash cars, in that they had double deadwoods or bumpers of unusual length to protect the drawbars. But all this was obvious to even a passing glance, and the risk which there was in coupling such cars was apparent. It required no special skill or knowledge to detect it. The intervener was * * * a mature man, doing the ordinary work which he had engaged to do, and whose risks in this respect were obvious to any one. Under those circumstances, he assumed the risk of such an accident as this, and no negligence can be imputed to the employer."

In Southern Pacific Co. v. Johnson, 16 C. C. A. 317, 69 Fed. 559, 572, where it was claimed that Johnson, an engineer in the employ of the company, lost his life either by falling off or being thrown from the running board of the locomotive, by reason of a defective engine furnished by the railroad company, the circuit court of appeals for this circuit said:

"The act of Johnson in going out on the running board while the train was in motion, to tap down the check valve, was incidental to the business of an engineer. It was usual, customary, and necessary to be done, according to the witnesses. It entered into the nature of his employment, and became one of the duties thereof, and he assumed the ordinary risks connected therewith."

It is in this class of cases that the principle expressed by the maxim, "Volenti non fit injuria," has the effect to debar the plaintiff from a remedy which might otherwise be open to him.

As was said in Mundle v. Manufacturing Co., 86 Me. 400, 403, 30 Atl. 16:

"It would not be just for one who has voluntarily assumed a known risk, or such as might be discovered by the exercise of ordinary care on his part, and for which another might be culpably responsible, to hold that other responsible in damages for the consequences of his own exposure to those risks which were known and understood by him."

Moreover, the facts alleged in the complaint are wholly insufficient to bring this case within the rule that the master must provide his employé with a safe place in which to work.

In Callan v. Bull, 113 Cal. 593, 603, 45 Pac. 1017, the court said:

"The rule which requires the master to provide a safe place and safe appliances for the servant is applied when the place in which the work to be done is furnished or prepared by the master, as in the case of a ship or a mill or a factory, or when the machinery or other appliances with which the servant is employed to work are furnished by the master; but it has no application when the place at which the work to be done or the appliances for doing the same are prepared by the servant himself."

See Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433; Coyne v. Railway Co., 133 U. S. 370, 10 Sup. Ct. 382; Marsh v. Herman, 14 Minn. 537, 50 N. W. 611; Butler v. Townsend, 126 N. Y. 105, 111, 26 N. E. 1017; Kelley v. Norcross, 121 Mass. 508; Mining Co. v. Clay's Adm'r, 51 Ohio St. 542, 38 N. E. 610; Flynn v. City of Salem, 134 Mass. 351.

This case is clearly distinguishable from that of Elledge v. Railway Co., 100 Cal. 282, 34 Pac. 720, cited by the plaintiff. There the plaintiff was employed by the railway company as a laborer, and was engaged in loading stone upon a car. The car was placed by the defendant within 10 feet of a cliff of rock, which the plaintiff supposed to be secure. He had no knowledge or means of knowledge of its being unsafe, and it was alleged that the defendant knew at the time it directed him to load the stone that said cliff was insecure and dangerous and liable to fall. The plaintiff was injured by the sliding rock and earth which fell from this cliff. The facts elicited at the trial were that the agent representing the railway company knew that the cliff of rock was unsafe and dangerous, owing to a seam or crack which was visible only from the rear, and had not been seen by the plaintiff, and could not be seen from the front where he was put to work. The case was therefore within the rule that it was the duty of the master to provide the employé with a safe place in which to work. As the master knew that the place was unsafe, and had not warned the men of the danger, the plaintiff was entitled to recover.

But in the present case the wharf where the plaintiff was put to work is not alleged to have been unsafe. The only danger alleged relates exclusively to the handling of the freight which had been carelessly piled upon the wharf by the Pacific Mail Steamship Company, for the purpose of being loaded upon the cars of the Southern Pacific Company. It was in the handling of this freight by the plaintiff and his fellow servants—not by any defects in the appliances furnished by the railroad company, nor danger at the place where he was employed—that plaintiff was injured. Suppose that in the Elledge Case there had not been any embankment or cliff of rocks, and that Elledge had been directed to aid and assist other workmen in loading the rock on the car of the railway company, which had been carelessly and negligently thrown into a pile by other parties, and that, in climbing on top of the pile to remove a stone therefrom, another stone in the pile had become displaced, and fell against Elledge, in-

flicting an injury; could it be said that the place at which he was directed to work was unsafe? There is always more or less danger in handling freight, either in loading or unloading cars; but my attention has not been called to any case where the master has been held responsible for an injury received by an employé engaged in that business, while simply doing the work he was employed to perform. In all the cases where a recovery has been had, the injury was occasioned by the place at which he was put to work being unsafe, by reason of some defect in the platform or wharf where freight was piled, which was known to the master and unknown to the servant, or by reason of some defect in the appliances furnished by the master to the servant.

It necessarily follows from the views already expressed that the complaint does not state facts sufficient to constitute a cause of action against the Southern Pacific Company, and it is therefore unnecessary to consider the other points raised by the demurrer. The demurrer is sustained.