[S. F. No. 1137. In Bank.—December 20, 1899.]

PHILIP HANLEY, Appellant, v. CALIFORNIA BRIDGE AND CONSTRUCTION COMPANY, Respondent.

NONSUIT—MOTION—ADMISSIONS—INTERPRETATION OF EVIDENCE.—A motion for a nonsuit admits the truth of all of the plaintiff's evidence, and every inference of fact that can be legitimately drawn therefrom; and upon such motion the evidence submitted by the plaintiff is to be interpreted most strongly against the defendant.

ID.—EVIDENCE OF NEGLIGENCE—INTERPRETATION FOR PLAINTIFF—INJURY
IN UNTIMBERED TUNNEL.—Upon a motion for nonsuit in an action
by an employee to recover damages suffered from the falling of
a rock in an untimbered tunnel, evidence that timbers were re-
quired to make the tunnel reasonably safe is to be taken in
connection with other evidence which, though susceptible of
two constructions, may be interpreted in favor of the plaintiff,
to the effect that no timbers were provided for use in the tun-
nel, and that the injury was in a completed part of the tunnel,
and such interpretation of the evidence must be taken as true
for the purposes of the motion.

ID.—QUESTIONS OF FACT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—
ASSUMPTION OF RISKS.—The question as to the negligence of the
defendant and the contributory negligence of the plaintiff or
his assumption of the risks of his employment, with full knowl-
edge of its dangers, must be left to the jury as questions of
fact to be determined by them, and not disposed of as questions
of law upon motion for a nonsuit, where it cannot be said
that all reasonable men must draw the same inference as to
the freedom of the defendant from negligence, or as to the con-
tributory negligence of the plaintiff, or assumption of risks by
him.

MASTER AND SERVANT—DUTY OF MASTER TO PROVIDE SAFE PLACE—PER-
MANENT TUNNEL—FALL OF OVERHANGING ROCK.—The rule of law
requiring the master to provide a safe place in which his ser-
vants may work applies to the construction of a permanent
tunnel in a mountain, and it is the duty of the master, in so far
as the work therein is completed, to make the tunnel reason-
ably safe, so as to prevent the fall of overhanging rock.

ID.—ACTION OF FELLOW-SERVANTS.—The rule as to the erection of tempo-
rary structures by fellow-servants has no application to the
construction of a permanent tunnel; and the fact that fellow-
servants are engaged in such construction cannot relieve the
defendant from his duty to provide a safe place for his ser-
vants.

ID.—RIGHTS OF SERVANT—PRESUMPTION.—The servant has a right to pre-
sume that the master has performed his duty in making the
place in which he is directed to work reasonably safe, and to
proceed upon that presumption, unless a reasonably prudent
person, in performing the work assigned to him, would have
learned facts from which he would have apprehended danger
to himself.

ID.—INEXPERIENCED SERVANT—UNOBVIOUS DANGER—ABSENCE OF WARN-
ING—CONTRIBUTORY NEGLIGENCE.—An inexperienced servant is not
chargeable as matter of law with contributory negligence,
where the danger to him was not so obvious and threatening
that a reasonably prudent person in his situation would have
avoided it, and where he had no warning of the danger occa-
sioned by the fault of the defendant in not providing a safe
place in which to work.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion.

Henley & Costello, for Appellant.

Davis & Hill, for Respondent.

CHIPMAN, C.—Action to recover damages for personal injury while working in a tunnel. The pleadings are verified. The cause was tried by a jury, and at the close of plaintiff's evidence the court granted defendant's motion for judgment of nonsuit. The appeal is from the judgment and from an order denying motion for new trial. Plaintiff introduced evidence tending to show the following facts: Defendant was engaged in the construction of a tunnel at Baker's Beach in San Francisco, and plaintiff was employed by defendant as a laborer, his duty being to load and haul away rock and debris from this tunnel with a wheelbarrow; he was inexperienced in running tunnels, and was working with experienced miners who were skilled and had had long experience in such work; he had been working six and a half days when the accident happened by which he was injured. The tunnel ran into the face of a receding rock bluff which rose up from the ocean beach; as driven in at that time it measured about eighteen feet at the bottom and about fifteen feet at the top, and was eight feet wide and nine or ten feet high; defendant had a superintendent who was in charge of the work and employed the men, and who visited the tunnel once or twice a day, but gave no instructions to the men concerning the work, except generally for them to go on with the tunnel, and he never gave any instructions to the plaintiff, except that when he employed plaintiff he directed him to wheel out the stuff which was blasted down or loosened; on the day of the accident the plaintiff, having laid some planks upon which to run his wheelbarrow, was arranging these planks on the bottom of the tunnel, when a rock, weighing about one thousand pounds, fell from the corner or angle where the roof and wall met, about ten feet from the mouth and eight feet from the back end of the tunnel, breaking plaintiff's leg, driving the

bones out through the flesh, and seriously injuring him; the rock fell quickly without giving opportunity to escape, and plaintiff heard no noise before it fell; the tunnel had passed this place three or four days before the rock fell; the rock which fell differed from the others "in that it had a kind of diamond shaped point projecting into. the tunnel," and was in size about two by two and one-half feet; before it fell "plaintiff did not notice any definite boundaries around it, nor whether the edge of the rock could be seen; that he had noticed this rock hanging there for three or four days before it fell." Timon, one of the miners helping to drive the tunnel, a witness for plaintiff, testified: "That the bluff into which the tunnel was being driven was seamy rock; that he thought the tunnel should have been timbered three or four days before to prevent the falling of rock and make it reasonably safe; . . . . that for three or four days he, Timon, had thought that rock dangerous [referring to the rock which did the injury], but that there was no visible cleavage or breaking around the rock"; he "didn't tell plaintiff it was dangerous or say anything to him about it, because he didn't think it his business to speak about it"; he spoke to the other two men about it and they paid no attention to. it; the rock could not be seen from the surface but only inside; a small stream of water ran down the face of the bluff over the tunnel, and the wall of the tunnel where this rock was located was damp, and he thought this water seeping through would loosen the rock "and let it fall sooner than it otherwise would on account of its not being timbered"; the other two miners "were trying to let the rock hang until they had got another center; they left it, thinking, perhaps, it would stay there; that the way to have made the tunnel reasonably safe for the men working in it would have been to have timbered it." He was asked if there were not timbers there for this tunnel. He answered: "There was none before the rock fell. There were no timbers there before the rock fell. They were on the ground, I guess, but we did not have them in the tunnel." Being again asked, he answered: "No timbers were there until the rock fell; not that I saw; not for the tunnel. There were timbers there for the sewer; but they had no timbers in the tunnel until the rock fell upon the man." He further testified that

they had, a half an hour before the accident, fired some blasts, and he was picking down the loose rock from the blasts when the rock fell, and plaintiff stood near him; their custom was to light the fuse to fire the blasts and go out to await the explosion, and then return quickly, and, "by using the pick and striking the walls and listening, would discover where rock had been loosened and was liable to fall and pick that down in order to avoid the danger of falling rock"; this was done just before the accident; a blast had been put in in the front of the tunnel and one opposite this rock at the top of the tunnel, and one opposite near the bottom; after the explosion witness went into the tunnel and "was picking down the loose rock, the plaintiff went about adjusting the planks on which to run the wheelbarrow"; at this time it was "the rock fell, and without noise, and plaintiff received his injuries." Sheridan, a witness for plaintiff, testified that he had been engaged thirty years in constructing tunnels, and had gone out to look at this ground with a view to bidding on the contract. "Q. And from your observation of it and your experience as a miner, I will ask you whether it is ground of such character as, to insure reasonable safety in tunneling, would or would not require timbering? A. That would depend altogether upon the size of the excavation. Q. Suppose the excavation was a tunnel of about ten feet wide and ten feet high? A. In that character of rock, I should judge that it would require some timbering." He further testified that many tunnels are run without timbering, depending upon the hardness of the rock and the course of the cleavage and circumstances of the case; that it is not customary in small tunnels to timber, depending upon circumstances; that a practical miner understands all these matters, and if he wants to work in a dangerous place it is his own risk; "but he should insist upon having it timbered where the character of the rock is dangerous; where it is seamy"; that the timbering is generally done by the miners, but not always; that experienced miners are often deceived "and something falls in where they have thought the tunnel safe," and "often where it looks as if the walls of the tunnel might fall in it does not fall but remains."

1. Respondent devotes some attention to the evidence of the witness Timon to show that it is susceptible of a different mean-

ing than that given it by appellant, and otherwise comments upon the weight of certain evidence; for example, that the result of Timon's testimony was that timbers were at the tunnel ready to be used for timbering, and not, as claimed by appellant, that there were no timbers there except for the sewer. The motion for nonsuit admits the truth of plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, and upon such motion the evidence should be interpreted most strongly against defendant. (*Goldstone v. Merchants' etc. Storage Co.*, 123 Cal. 625.) This rule must be applied to all the evidence submitted by plaintiff.

2. The contention of respondent may be summarized as follows: That the three experienced employees and plaintiff were fellow-servants, and this fact was for the court to determine; that the injury resulted from the negligence of these men, and if the duty of removing the dangerous rock rested more directly upon the skilled and experienced workmen, still the rule applies to all fellow-servants, though working in different capacities, and the employer is not liable to one who is injured by the negligence of another; that though it be the duty of the employer to furnish the employee a safe place in which to work, in the present case the rule has no application because the employer did not furnish the place, but plaintiff and the other three furnished the place by making the tunnel (citing *Callan v. Bull,* 113 Cal. 593); that the nature of the work to be done by plaintiff and the condition of the tunnel were visible facts and the dangers of the employment known to him and hé assumed the risks (citing *Vaughn v. California etc. Ry. Co.,* 83 Cal. 18, and other cases); and finally that the facts show contributory negligence.

The complaint charges "that said defendant, in violation of its duty to furnish this plaintiff with a safe place to work, negligently and carelessly failed to properly or at all brace or timber said tunnel." This allegation is not denied. The evidence tends to show that the materials through which the tunnel was being driven were of a character requiring it to be timbered to be reasonably safe; the superintendent having charge of the work visited the tunnel once or twice a day, and must be presumed to have known as much as his workmen with regard to

the general requirements to make the place reasonably safe from a danger such as befell plaintiff, even though it does not appear that he had actual knowledge of this particular overhanging rock; and it was his duty to ascertain the condition of the tunnel as to its safety. Among the requirements necessary to the safety of the workmen, as the evidence tends to show, were timbers to be placed in the tunnel, and the evidence also tends to show that none were supplied for this purpose although there were timbers for the sewer.

I cannot agree with respondent's counsel that the rule of law which requires the master to furnish a safe place in which his servants may work does not apply to this case as it presents itself; what further evidence might disclose is not now to be considered. In *Callan v. Bull, supra,* relied upon by respondent, the facts presented a different case from this. There the workmen were engaged in constructing a jetty. To do this certain temporary structures were necessary, and it was through the defects in one of these that the injury occurred. In speaking of the rule we are now considering the court said: "Manifestly, the place at which the work was to be done was not provided by the defendant, nor can it be said that different portions of the work in which the laborers might be engaged as it progressed was the 'place' furnished by their employer, within the meaning of the above rule, or that the bent or trestle, from which was suspended the mat on which the plaintiff was at work at the time of his injury, was one of the appliances to be furnished by the defendant." The soundness of these views need not be and are not questioned. Elsewhere in the opinion it was said that the rule "has no application when the place at which the work is to be done, or the appliances for doing the same, are to be prepared by the servant himself. If the appliance is furnished by the master for the purpose of enabling the servants to perform the work in which they are to be engaged, he is required to see that it shall be reasonably safe for that purpose; but if the preparation of that appliance is a part of the work which the servant is required to perform, the master is not liable for any defect in its preparation." Among the cases cited in support of the opinion is *Coal etc. Co. v. Clay,* 51 Ohio St. 542, where certain laborers in a coal mine were injured by the falling in of the roof

by reason of its not being sufficiently propped, and the court held that "the place was not furnished as in any sense a permanent place of work, but was a place in which surrounding conditions were constantly changing, and, instead of being a place furnished by the master for the employees, within the spirit of the rule referred to, was a place the furnishing and preparation of which was in itself part of the work which they were employed to perform." What was said in *Callan v. Bull, supra,* and what we find in the Ohio case must be read in the light of the facts before the court. Where a permanent tunnel is driven into a mountain to open up veins of mineral, or pierces a mountain to furnish a permanent bed for a railroad, we think that as fast as it is completed the finished tunnel becomes an appliance or means furnished by the master by which the remaining work is to be prosecuted. Some of the great railroad tunnels of this century—for example, the Hoosac and Mont Cenis tunnels—required years for their completion from end to end. It would be most unreasonable to hold that the laborer employed upon the unfinished portion of one of these tunnels must take a fellow-servant's risk in passing through miles of completed work to get to his place of employment; nor can we see that the case would be different where he himself helped to complete the finished portion. The evidence before us is not entirely clear as to whether the tunnel in question was completed at the point where the accident occurred so as to bring it within the reason of the rule we are discussing, but there was not sufficient evidence on the point to justify the court in holding that portion of the tunnel not to be completed in the sense we are considering a completed tunnel.

The evidence is that the tunnel had been driven in about eighteen feet and that it was about eight feet wide and from nine to ten feet high; that the rock that fell was in the top of the tunnel and was about ten feet from the mouth and eight feet from the back end of the tunnel; that the tunnel had passed the place where the rock fell about three or four days. These expressions seem to imply a completed tunnel to the extent named—at least must be so taken on this motion. There is other evidence showing that for some reason, not fully nor intelligently explained, two blasts were put in the side of the tun-

ncl opposite where the fatal rock was hanging. This might possibly imply that at that point the tunnel was not entirely completed. We do not think, however, that we are sufficiently enlightened by the evidence as now before the court to warrant us in saying that it takes the case out of the rule we are considering. We do not think that the court on this motion should assume on such evidence as this to say that the tunnel was not completed at the point in question, and that at that particular point the "place" was not such as it was the duty of the employer to furnish and to see that it was reasonably safe.

I think the view we have taken of the rule under consideration is fully supported in *Union Pac. Ry. Co. v. Jarvi*, 53 Fed. Rep. 65, and in *Kelley v. Fourth of July Min. Co.*, 16 Mont. 484. In the first of these cases Jarvi was a coal miner. He was injured by a rock falling upon him from the roof of one of the tunnels by which he had access to the place where his particular work called him. The case was heard before Caldwell and Sanborn, circuit judges, and Shiras, district judge. The opinion presents a careful review of the law upon the question here. The court said: "It is the duty of the employer to exercise ordinary care to provide a reasonably safe place in which his employee may perform his service. It is his duty to use diligence to keep this place in a reasonably safe condition, so that his servant may not be exposed to unnecessary and unreasonable risks. The care and diligence required of the master is such as a reasonably prudent man would exercise under like circumstances in order to protect his servants from injury. It must be commensurate with the character of the service required, and with the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. . . . . For a failure to exercise this care, resulting in injury to the employee, the employer is liable; and this duty and liability extend, not only to the unreasonable and unnecessary risks that are known to the employer, but to such as a reasonably prudent man in the exercise of ordinary diligence—diligence proportionate to the occasion—would have known and apprehended." Further, as to the duty of the master and the rights of the servant it was said: "The latter [the servant] has a right to presume, when directed to work in a par-

ticular place, that the master has performed his duty, and to proceed with his work in reliance upon this assumption, unless a reasonably prudent and intelligent man in the performance of his work as a miner would have learned facts from which he would have apprehended danger to himself." Upon the question of contributory negligence it was said: "The degrees of care required of the master and servant also differ, because defects in a piece of machinery or in the roof of a mine that to the eye of a competent inspector, such as the master employs, portend unnecessary and unreasonable risks and great danger, may have no significance to a laborer or miner who has had no experience in watching and caring for machinery or roofs of slopes in a mine, and the latter is not chargeable with contributory negligence simply because he sees or knows the defects, unless a reasonably intelligent and prudent man would, under like circumstances, have known or apprehended the risks which these defects indicate. The dangers and defects merely must have been so obvious and threatening that a reasonably prudent man would have avoided them in order to charge the servant with contributory negligence." These principles are supported by numerous cases cited in the opinion and seem to us a clear and sound exposition of the law.

Applying these rules of law to the facts of this case, ought the court to have nonsuited the plaintiff? In actions like the present one, questions of negligence are for the jury to determine; and it is only when the facts are undisputed and are such that reasonable men can fairly draw but one conclusion from them that the question of negligence is ever considered one of law for the court. (*Union Pac. Ry. Co. v. Jarvi, supra,* and cases cited.) We do not think the case as it comes to us here is one where all reasonable men must draw the inference that the plaintiff was guilty of, or the defendant free from, negligence.

In *Kelley v. Fourth of July Min. Co., supra,* plaintiff was working in a mine and was an experienced miner. His work was at the face of the tunnel which he was helping to run. He was injured by the falling of rock from the roof of the tunnel a short distance behind where he worked. The facts were not in all particulars as in this case, but they presented the question now before us and it was decided that: "Where a miner is engaged

in running a tunnel, drilling and blasting from its face, the employer is bound to furnish a safe place for work, by using proper precautions to prevent the falling of the roof of that part of the tunnel already created, and by keeping the floor so free of debris as not to obstruct his escape in case of accident." (Syllabus.)

Plaintiff had no knowledge of or experience in running tunnels; he neither knew, and, because he was inexperienced, had not the means of knowing, that the tunnel was unsafe without timbers; he saw this overhanging rock, but it presented to him no evidence of loosening and no cleavage from around its edges was visible; and it was high above his head and beyond his reach; his fellow-servants were skilled in mining and they gave him no warning, although at least one of them thought it liable to fall; the superintendent visited the mine daily and he gave no warning and took no steps for the safety of plaintiff; a witness of long experience in running tunnels testified that in his opinion the tunnel would require some timbering, and in this opinion he was corroborated by the witness Timon. We cannot say that the facts were such that the court had the right to consider the question of negligence involved as one of law for the court. We do not deem it necessary to discuss the other points made by defendant, for, conceding that the men on the work were fellow-servants, it was still the duty of defendant to furnish them a reasonably safe place in which to work. Whether the nature of the work to be done by plaintiff and the condition of the tunnel were visible facts, and the dangers of the employment were known to plaintiff, were questions of fact as to which there was at least some evidence which should have gone to the jury. The decision of the lower court seems to have turned on the proposition that the case was similar to *Callan v. Bull, supra,* and was controlled by the rules applied in that case. But we think the circumstances attending the injury in this case clearly distinguishable from those found to exist in *Callan v. Bull, supra,* and that the cases in 53 Federal Reporter and 16 Montana, *supra,* more nearly illustrate the principles which should govern here.

It is advised that the judgment and order should be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.          Temple, J., Garoutte, J., Harrison, J., Van Dyke, J., Henshaw, J.

McFarland, J., dissented, and thought that the judgment should be affirmed.