[S. F. No. 3441.   Department Two.—December 2, 1905.]

JOHN LEISHMAN, Appellant, v. UNION IRON WORKS, Respondent

NEGLIGENCE—MASTER AND SERVANT—SAFE APPLIANCES.—While it is the settled rule that an employer must provide his employees with safe appliances with which to do the work for which they are engaged, and must keep such appliances in reasonably safe condition, and that this is a personal obligation which cannot be delegated so as to relieve the employer from liability for not having done so, still there is no positive duty incumbent upon him to furnish such appliances as completed instruments, nor to inspect them after construction. He may supply sufficient and suitable materials to the employees with which they are to construct the appliances, in accordance with the terms of their contract of employment. If he does so, he is not liable for an injury through a defect in the construction or adjustment of the appliances.

ID. — FOUNDRYMAN — MOLDING — NEGLIGENCE OF PATTERN-MAKER — FELLOW-SERVANT.—A foundryman who conducts a carpenter-shop as an integral part of the molding department of his business, in which the carpenters, from suitable materials furnished them, prepare patterns for the use of the molders in the process of casting, is not liable for injuries caused to a molder by reason of the negligence of one of the carpenters in preparing a pattern for use. In such case the carpenters and molders are fellow-servants engaged in the same general business.

ID.—FELLOW-SERVANT—FOREMAN.—The foreman of such molding department and the foreman of such carpenter-shop, who was under him, were fellow-servants of the journeyman molders in the molding department.

ID.—SUPERIOR IN COMMON EMPLOYMENT.—Under section 1970 of the Civil Code an employer is not bound to indemnify an employee for personal injuries caused by the negligence of a fellow-servant, notwithstanding the fellow-servant through whose negligence the injury came was the superior of the servant injured in the general service in which they were in common engaged.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Charles F. Hanlon, for Appellant.

Van Ness & Redman, for Respondent.

LORIGAN, J.—Plaintiff was a journeyman molder in the service of defendant. While assisting in casting an iron piston-ring, he was seriously injured by the explosion of the mold in which the ring was being cast, and brought this action to recover damages for the injuries sustained. The case was tried before a jury, and at the close of the evidence the trial court granted a motion made by the defendant for a nonsuit. Judgment was entered accordingly in favor of defendant, and this appeal is taken from the judgment and from an order denying plaintiff's motion for a new trial. The only question involved on the appeal is the validity of the judgment of nonsuit.

The material facts, as disclosed by the pleadings and evidence, stated as briefly as possible, are as follows: That plaintiff was injured at the time and place mentioned in the complaint, and there was evidence tending to prove that his said injuries were of a serious character. That at the time he was injured he was an employee of the defendant, working in the iron molders' department of defendant. That he was injured while assisting in casting a piston-ring. That for the purpose of casting such piston-rings the employees of defendant were furnished with lumber, iron, and other material, out of which to construct the molds in which such piston-rings were cast, and out of such material so furnished said employees did from time to time, as needed, construct such molds. That the molds aforesaid in which such piston-rings were cast, consisted of three parts, commonly called the "drag," "cheek," and "cope," fitting the one upon the other. To the bottom of the cheek was attached and bolted an iron ring, or disk, known as the "plate." In the preparation of the flask it was customary to attach to the bottom of the cheek either this iron ring, or disk, or a wooden substitute, called a "chuck." Each of these parts was filled with sand, rammed and tamped. In this sand, so rammed and tamped in the cheek, a pattern of the casting to be made is sunk and withdrawn, and the molten iron poured into the space made by the removal of the pattern, which iron when cooled makes the casting. For the purpose of making a casting a pattern is furnished the ironmolders' department, which pattern is made in, and furnished by, the pattern department of defendant, a department separate from and

independent of the molders' department. For the purpose of casting a piston-ring such as was being cast at the time of plaintiff's injury, the flat iron ring, or disk, commonly known as the "plate," is attached to the cheek, and these iron plates are molded and cast in the ironmolders' department from time to time as needed, and are kept on hand for use from time to time as required. The wooden framework of the drag, cheek, and cope were made out of lumber furnished by the defendant for that purpose by carpenters, who are under the orders and subject to the control of the foreman of the ironmolders' department; the carpenter-shop, in which said carpenters work, being separate from and independent of the general carpenter-shop of the defendant and a part of the ironmolders' department of defendant. There was evidence tending to prove that the explosion of the mold, by which explosion plaintiff was injured, might have been caused by the use of a plate of improper size attached to the cheek, by reason of an unusual amount of rust upon said plate used, or by reason of improper tamping of the sand, which may have permitted the molten metal in the mold to find its way through the sand to the wooden bars of the cope. That in the making of castings in the foundry of defendant the patternmaker would prepare a pattern for each of said castings, and the foreman of the molding department would distribute daily these patterns to the molders in said department, and it would be, and was, the duty of each molder receiving a pattern to obtain from the foreman of the molding department the necessary drag, cheek, and cope with which to make the casting, and thereupon to proceed with said drag, cheek, and cope to his place of work in the molding department, and with sand on hand in the molding department to prepare the mold in which to make the casting, and upon the completion of the mold, together with other employees of the defendant in the molding department, to proceed with and finish said casting. That it was the business of the molder receiving the pattern to secure from the foreman of the molding department the necessary drag, cheek, and cope, and if any part thereof, or the plate upon the cheek, were not in proper order for the purpose for which intended and for the work to be done, to call the attention of the foreman to any existing defect therein, whereupon it

was the duty of said foreman to have such defect remedied. That the drag, cheek, and cope in use at the time of the accident were constructed in the carpenter-shop of defendant, a part of the molding department, upon the order of the foreman of the molding department, out of materials furnished by defendant to and for the molding department, and the plate attached to the cheek was attached by the carpenter. At the time of the accident there were on hand in the molding department, and for use in said department, for work such as was being done at the time of the accident to plaintiff, and by reason of which plaintiff was injured, drags, cheeks with plates, and copes other than the drag, cheek with plate, and cope in use at the time plaintiff was injured, which could have been used in place of the drag, cheek with plate, and cope actually used, and it was the duty of the foreman to have selected from such drags, cheeks, and copes for the job upon which plaintiff was injured such as were in order, with the proper plate, and proper for that job. The defendant did not, other than as hereinabove stated, furnish to plaintiff or its other employees in the molding department, a finished drag, cheek, plate, or cope with which to make the castings, but furnished to and for said department the necessary material from which to construct said appliances, and they were constructed as aforesaid. From time to time the drags, cheeks, plates, and copes in use in said department would become worn and inefficient for one kind of work, while remaining efficient for some other or different kind of work, and it was the duty of the foreman and workmen to see to it that for each particular job a proper and efficient drag, cheek, and cope was selected out of the supply on hand and used. That each molder was understood to be capable of determining the sufficiency and safety for use on the job given him of the drag, cheek, and cope furnished him, and if in his judgment there was any defect in the drag, cheek, or cope furnished, it was his privilege and duty to call the attention of the foreman to such defect, and to procure another drag, cheek, or cope which was not defective. That the nature of the work in the molding department of defendant, in the use of drags, cheeks, and copes, was such that rust would always accumulate upon the plates attached to such cheeks, and whether or not the amount of rust upon any

particular plate was such as to render the use of the cheek unsafe was a fact to be determined immediately prior to its use, and the molder using the cheek was as competent as any other employee of defendant to determine such fact; and if in fact the amount of rust upon any particular plate was such as to render the cheek to which it was attached dangerous, then and in that case it was the duty of the molder, through the foreman, to procure another cheek which was in all respects proper to use, or to remove the rust from the plate attached with oil, of which there was always plenty at hand in the department for that purpose.

Upon the day when plaintiff was injured one Drury, a fellow-molder of plaintiff, was given a piston-ring to cast, and having secured the three parts of his flask, proceeded to his place of work and prepared the mold as above described. While plaintiff was assisting him in pouring the molten metal into the mold it exploded, plaintiff receiving the injuries of which he complains. As stated, it is not clearly apparent from the testimony in the case to what cause the explosion of the mold was attributable. It might have been caused by the use of an iron plate of improper size attached to the cheek, or by the use of one which was in an improper and dangerous condition to be used on account of the accumulation of rust upon it, or by reason of improper tamping of the sand, which may have permitted the molten metal in the mold to find its way to the bars of the cope, and so cause the explosion without the metal having ever reached the plate at all.

With the particular cause of the accident, however, we have no present concern. The only point to be determined on this appeal is whether, upon a consideration of the entire evidence, the lower court was warranted in taking the case from the jury and deciding as a matter of law that upon no theory of the case did the evidence, considered most favorably in behalf of the plaintiff, show any liability upon the part of defendant, and would not have warranted a verdict in his favor. The theory of plaintiff on the evidence was that the accident was occasioned through the use of a defective plate attached to the cheek, and that the plate was too small for the particular casting in question, was composed of four pieces, when it should have properly consisted of but one,

and, besides this, was coated with rust to such an extent that when the molten metal reached it the explosion occurred. His legal contention, based on this theory of the evidence, is that it was the imperative duty of the defendant to furnish the molders with appliances reasonably safe to do the work of casting, and that in failing to have a plate of proper size and in good condition attached to the cheek of the mold at which plaintiff was working when his injuries were received the defendant failed to discharge its legal obligation, and is liable. The lower court in granting the nonsuit evidently held, notwithstanding the general rule as contended for by plaintiff, that when the defendant furnished to the molding department proper materials from which to construct all parts of the appliances—the flasks—with which the casting was to be done therein, and provided competent employees to construct and attach them, the defendant had discharged all the duty it owed to the employees in such department, and was not liable for any defects in the construction or adjustment of such appliances occasioned by the employees themselves, and that, proper materials having been furnished to the employees in the molding department by the defendant for the proper construction of such appliances to be used in such department, any defects, either in construction or adjustment thereof, must be deemed to have proceeded from the negligence of fellow-servants of the plaintiff, for which, under the familiar rule of law, the defendant could not be held liable. We are satisfied that under the evidence the trial court applied to it the proper rule of law, and correctly granted the motion for nonsuit.

There can be no doubt but that the settled rule is that an employer must provide his employees with safe appliances with which to do the work for which they are engaged, that he must keep such appliances in reasonably safe condition, and that this is a personal obligation which cannot be delegated so as to relieve the employer from liability in not having done so. But there is no positive duty incumbent upon an employer to furnish such appliances to do the work as completed instruments. He may supply sufficient and suitable materials to the employees themselves out of which the appliances with which they are to work are to be constructed and adjusted by them, in which case the general

rule that safe appliances shall be furnished by the employer
—that is, that efficient and complete appliances shall be fur-
nished by him—has no application. His obligation to his
employees as far as furnishing such appliances is concerned
is satisfied when he furnishes suitable materials with which
to construct them, and under the terms of the contract of
employment, either express or implied, the employees them-
selves are to do the constructing. In that event the employer
is not liable for an injury through a defect in the con-
struction or adjustment of such appliances. Upon this sub-
ject it is said, in *Callan* v. *Bull,* 113 Cal. 603, [45 Pac. 1020]:
"The rule which requires the master to provide a safe place
and safe appliances for the servant is applied when the
place in which the work is to be done is furnished or pre-
pared by the master, as in the case of a ship or a mill or
a factory, or when the machinery or other appliances with
which the servant is employed to work are furnished by
the master; but it has no application when the place at which
the work is to be done or the appliances for doing the same
are to be prepared by the servant himself. If the appliance
is furnished by the master for the purpose of enabling the
servants to perform the work in which they are to be en-
gaged, he is required to see that it shall be reasonably safe
for that purpose; but if the preparation of that appliance
is a part of the work which the servant is required to per-
form, the master is not liable for any defect in its prepara-
tion. 'The rule does not apply to a case where several persons
are employed to do certain work, and by the contract of
employment, either express or implied, the employees are to
adjust the appliances by which the work is to be done.'
(*Burns* v. *Sennett,* 99 Cal. 363, [33 Pac. 916].)" In *Kerrigan*
v. *Market Street Ry. Co.,* 138 Cal. 511, [71 Pac. 622], it is
said: "Where certain persons are employed to do certain
work, and by the contract of employment, either express or
implied, such employees are to construct and adjust the
appliances by which the work is to be done, the employer to
furnish proper material and the employees to construct and
adjust such appliances as in their judgment are necessary,
the employer is not liable to such employees for any defect in
the construction or adjustment of such appliances."

Now, it appears clearly from the evidence that the flasks

necessary for making castings were not furnished as complete appliances by defendant. It did not assume to do so, and it is obvious that under its contract of employment with the employees in the molding department of its business it was not required that they should be so furnished, but, on the contrary, that they should be constructed by the employees of that department themselves. To that end it furnished good and sufficient material—lumber and iron. It is not questioned but that the employees whose duty it was to construct the flasks were competent workmen. No complaint is made that the carpenters in the molding department did not properly put together the woodwork of which the flask consisted, but only that the plate adjusted by them, and which was cast by the ironmolders themselves, whose duty it was to cast it, was not a proper one to be used in making a particular casting. As, however, the defendant furnished not only the lumber and competent carpenters, but the pig-iron for the making of these plates, and competent ironmolders, as the plaintiff himself was, to cast them for use on the flasks, it is evident that, under the rule stated above, the defendant failed in no duty it owed the plaintiff, and that assuming the injury to plaintiff was occasioned as claimed by him, still it proceeded from the neglect of fellow-employees to properly construct and adjust the flask from materials furnished the molders' department for that purpose.

It is claimed, however, by plaintiff that the carpenter-shop was a separate and distinct shop or department from that portion of the molding department in which plaintiff was engaged, and that the foreman of the carpenter-shop was not a fellow-servant with plaintiff in the construction and adjustment of the flask in question. But it appears from the evidence in the case that this is not true in point of fact. The foreman of the carpenter-shop, or, as under the evidence he might more properly be designated, the "boss carpenter," was not in the control of an independent department. The carpenter-shop was strictly a part of the molding department, and its foreman was under the control and direction of O'Neill, the foreman of that department. O'Neill had control and supervision of the entire molding department, including therein, as a part thereof, the carpenter-shop. It was as essential, in efficiently performing the work of casting,

in which the molding department was exclusively engaged, that the flasks should be put together by the carpenter in that department for use by the ironmolders therein, as it was that the latter should prepare the molds in them and do the casting. The only work that was done in the carpenter-shop was for the benefit and in aid of the molding department, particularly in the construction and adjusting of these flasks. And the making of these flasks was as much a part of the work of the molding department as was the making of the castings. But were this not so, the department rule, relative to which counsel for appellant cites numerous decisions from other jurisdictions, does not obtain in this state. Our Civil Code (sec. 1970) lays down this general rule: "An employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless the negligence causing the injury was committed in the performance of a duty the employer owes by law to the employee, or unless the employer has neglected to use ordinary care in the selection of the culpable employee." In construing this section it was early said by this court that "The law of this state respecting this subject, as set forth in the code referred to, recognizes no distinction growing out of the grades of employment of the respective employees, nor does it give any effect to the circumstance that the fellow-servant through whose negligence the injury came was the superior of the plaintiff in the general service in which they were in common engaged, and the alleged distinction in this respect insisted upon by the appellant's counsel, founded, as he claims, on the general principles of law and the adjudged cases, requires no examination at our hands." (*McLean* v. *Blue Point Gravel M. Co.*, 51 Cal. 258.) To the same effect are *Congrave* v. *Southern Pacific R. R. Co.*, 88 Cal. 361, [26 Pac. 175]; *Davis* v. *Southern Pacific R. R. Co.*, 98 Cal. 13, [32 Pac. 646]; *Noyes* v. *Wood*, 102 Cal. 392, [36 Pac. 766]; *Livingston* v. *Kodiak Packing Co.*, 103 Cal. 264, [37 Pac. 149]; and *Donovan* v. *Ferris*, 128 Cal. 53, [60 Pac. 519, 79 Am. St. Rep. 25]. Within this rule, as declared by the code and construed by the authorities, the foreman of the carpenter-shop was a

fellow-servant of the plaintiff. They were both in the employment of defendant in the molding department, both under the control of the general foreman of that department, O'Neill, and both engaged not only in the general business of defendant, but in the particular business in which the molding department was exclusively engaged—casting. And the same rule applies to the foreman, O'Neill, in as far as it is claimed that the defendant should be held responsible for his asserted negligence in failing to inspect the flask, the explosion of which occasioned the injury. If the positive duty rested upon defendant to supply completed and finished flasks to the molding department, and inspect them as necessity for doing so arose, and the foreman, O'Neill, represented the defendant, as its vice-principal, to discharge these duties of supply and inspection, his neglect would be no doubt that of the defendant. But, as we have seen, no such positive duty of furnishing the flasks in the completed state devolved upon the defendant. It furnished, as it had a right to do under the rule above stated, only the materials for such purpose, the task of constructing the flasks to be performed by its employees. Having furnished such materials, and competent workmen to construct the flasks, defendant fully discharged its duty to its employees. As it was not bound to furnish finished appliances, but discharged its duty by furnishing adequate materials for that purpose, it logically follows that it was not required to inspect the appliances after construction. The construction and inspection of such flasks were simply details in the proper execution of such work after ample provision made for its being safely done, and as to such details the foreman and the workmen in the department were fellow-servants. (*Noyes* v.*Wood,* 102 Cal. 389, [36 Pac. 766].) The other cases cited immediately preceding bear also directly upon this point and illustrate the application of the rule.

We do not think any further discussion of this matter is necessary, nor to particularly consider additional points urged by respondent in support of the judgment of nonsuit,— namely, that the evidence shows that there were on hand in the molding department at the time the flask in question was selected other flasks which, taken in their entirety, were in good condition, and that if any improper selection was made by the foreman or other employees, the defendant was not

liable for such error in judgment; further, that the molder Drury was capable of determining, and should have inspected to ascertain, whether the flask in question was sufficient and safe, and that his failure to do so and to call the attention of the foreman of the department to the defective plate, or substitute a chuck therefor, or remove the rust from it with the oil at hand for that purpose, was negligence of a fellow-employee of plaintiff, for which defendant was not responsible.

Whatever merit there may be in these points we do not discuss, because under the settled rule of law which we have mainly considered, and which was the principal question discussed by counsel, defendant having furnished the materials out of which the appliances for use in the molding department were to be constructed, and the employees in that department being required to construct them from the materials so furnished, the safety-appliance rule urged by appellant has no application, and the defendant was not liable for any injury resulting to plaintiff in such department from a defect in the construction and adjustment of such appliances by his fellow-employees.

Under this rule of law, applied to the evidence in the case, the lower court properly granted the motion for a nonsuit, and the judgment and order appealed from are therefore affirmed.

McFarland, J., and Henshaw, J., concurred.