[Civ. No. 491. First Appellate District.—May 27, 1908.].

## C. A. BORT, Respondent, v. JOHN QUADT, Appellant.

NEGLIGENCE—MASTER AND SERVANT—UNSAFE ROPE FOR SCAFFOLDING— SUFFICIENCY OF COMPLAINT—DEMURRER.—A complaint by a servant against his master for alleged injuries sustained through the alleged negligence of the master in furnishing an insecure, unsafe and defective rope for a scaffolding which broke, precipitating plaintiff to the ground, which avers ''that the said rope was one of the usual and necessary appliances used and necessary in the work plaintiff was employed to do by said defendant,'' who ''well knew that said rope which broke as aforesaid was unsafe, insecure and defective,'' but ''failed, neglected and refused to remove the same, and to supply a safe and secure rope in its stead,'' and that plaintiff's injuries ''were not sustained through ·any fault of said plaintiff,'' states a cause of action, and a general demurrer thereto was·properly overruled.

ID.—RULE INAPPLICABLE TO CASE STATED.—The rule that where it clearly appears that the appliance was constructed by the servant himself, or by him and his fellow-servants, from material furnished by the employer, he is not liable for any neglect in the preparation of the appliance, has no application to the case stated in the complaint, in which it is admitted upon demurrer that the rope which broke was itself an appliance.

ID.—ROPE AS AN APPLIANCE—DUTY OF MASTER.—A rope may be an appliance under proper circumstances, and regarding it as such, which must be done upon the demurrer, it was the duty of the master to see that it was a reasonably safe and suitable appliance, and to keep it in safe and proper condition, and he could not delegate this duty so as to shift the responsibility to any agent or servant.

ID.—DEFECTIVE MATERIALS FURNISHED BY MASTER—NEGLECT OF DUTY— VERDICT SUSTAINED.—Where the evidence shows that the case was one of defective materials furnished by the master for the construction of the scaffolding, and that his duty was neglected in that respect, the verdict for the plaintiff will not be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Pippy & Bahrs, for Appellant.

Robert P. Troy, for Respondent.

KERRIGAN, J.—This is an action for personal injuries suffered by plaintiff, alleged to have been caused by the negligence of the defendant. The case was tried by a jury, which found for plaintiff, and judgment was accordingly entered. The defendant appeals from the judgment and from an order denying his motion for a new trial.

At the time of the accident the plaintiff was in the employ of the defendant as a journeyman painter, and was engaged with others in painting the Palace Hotel in San Francisco. On November 9, 1904, the second day of his employment, a staging on which he was suspended collapsed and fell to the sidewalk from a height of about forty feet, whereby plaintiff sustained serious personal injuries, crippling him for life. The cause of the accident was the breaking of a defective or inadequate sling to which was attached the staging used in painting the hotel. The staging consisted of a ladder, with planks placed upon it, and three "falls." It was known as a "three-fall staging." A "fall" consists of four ropes inserted in pulleys, and these ropes are attached to a ladder, and run from it to the roof of the building, where they are connected with the "sling." The ladder, or platform part of the staging, is raised or lowered with these ropes. There was a "fall" at each end of a ladder, and a third "fall," known as the "middle fall," in the center of the ladder. At the top of each "fall" there was a block and tackle, and this was attached to a "sling" which hung down from the roof about a foot. It was the middle sling that broke.

Appellant interposed a general demurrer to the complaint, which was overruled, and appellant contends that in so ruling the court committed error. The part of the complaint aimed at by the general demurrer reads as follows: "That the said rope which broke as aforesaid was insecure, unsafe and defective, and the said rope was one of the usual and necessary appliances used and necessary in the work plaintiff was employed to do by said defendant. That the said defendant well knew that said rope which broke as aforesaid was unsafe, insecure and defective, but that said defendant failed, neglected and refused to remove the same, and to supply a safe and secure rope in the place and stead thereof.

That said injuries so sustained as aforesaid were not sustained through any fault of said plaintiff."

Counsel for appellant say that the component parts of a painter's scaffolding are not appliances furnished by the employer to the employees with which they are to do their work; that the only duty the appellant owed the workmen was to furnish them with adequate and sufficient materials from which to construct the necessary scaffolding. To maintain this view they cite a number of cases, in each of which the evidence on the trial clearly showed that the appliance was constructed by the servant himself, or by himself and fellow-servants, from materials furnished by the employer. In such a case the rule is well settled that the master is not liable for any neglect in the preparation of the appliance. (*Noyes* v. *Wood*, 102 Cal. 392, [36 Pac. 766]; *Leishman* v. *Union Iron Works*, 148 Cal. 274, [113 Am. St. Rep. 243, 83 Pac. 30]; *Callan* v. *Bull*, 113 Cal. 603, [45 Pac. 1017].) In the last case it is said: "The rule which requires the master to provide a safe place and safe appliances for the servant is applied when the place in which the work is to be done is furnished or prepared by the master, as in the case of a ship or mill or a factory; and when the machinery or other appliances with which the servant is employed to work are furnished by the master; but it has no application when the place at which the work is to be done, or the appliances for doing the same, are to be prepared by the servant himself. If the appliance is furnished by the master for the purpose of enabling the servants to perform the work in which they are to be engaged, he is required to see that it shall be reasonably safe for that purpose; but if the preparation of that appliance is a part of the work which the servant is required to perform, the master is not liable for any defect in its preparation."

The case at bar, however, does not come within the rule contended for by appellant and laid down in those cases, for it is alleged in the complaint that the rope which broke was itself an appliance; and regarding it as such—which of course we must do on demurrer—it was the duty of the master to see that it was a reasonably safe and suitable appliance, and to keep it in a safe and proper condition; and furthermore, this was a duty which he could not delegate so as to shift

the responsibility to any agent or servant. (*Wall* v. *Marshutz & Cantrell*, 138 Cal. 522, [71 Pac. 692].) That a rope, under some circumstances, may be an appliance, see *Silveira* v. *Iverson*, 125 Cal. 266, [57 Pac. 996], 128 Cal. 187, [60 Pac. 687] ; *Manning* v. *App Consolidated Mining Co.*, 149 Cal. 35, [84 Pac. 657] ; 20 Am. & Eng. Ency. of Law, p. 84. It follows that the complaint states a cause of action, and that the demurrer thereto was properly overruled.

We shall refrain from reviewing the evidence in this case. If we felt called upon to do so, unnecessary labor would be devolved upon the court, for the transcript was compiled in utter disregard of that part of section 661 of the Code of Civil Procedure which requires that the statement or bill of exceptions shall contain only so much of the evidence as may be necessary to explain the grounds of the appeal. It is sufficient to say that we lean to the view that, under all the circumstances of this case, the rope which broke was not an appliance, as contended by respondent, but that it was a part of a stock of materials from which the appliance (scaffolding) was to be constructed. Consequently, if sufficient materials were furnished by appellant out of which the employees could have constructed a safe scaffolding, the appellant performed his full duty; but there is sufficient evidence in the record to show that in this respect the appellant failed. The foreman Peterson, who was employed after the scaffolding was built and adjusted, testified concerning it in part as follows: "I told him (appellant) that I would not go up on the staging and do my work; that the staging was rotten and so on, and that it would not hold anybody. He said, 'That staging is all right.' And I said it was not. I had a little fuss in the street with the defendant, and he said, 'Go up and strengthen it.' I took all of the rope I had to strengthen the two end falls, and I did not pay any attention to the middle fall, and there is where it happened. I tried to get down to the middle fall, but the rope was not long enough, the rope did not reach the middle fall. I tried to put the rope on the middle fall to put extra strength in it." On cross-examination he made it plain that he did not at this time strengthen the middle fall because he had no more rope. It is true that new rope was sent by appellant to the building the next day, which was several days before the accident;

but the foreman was instructed not to use it on the scaffolding in question until, in the usual progress of the work, it reached the ground. In reference to these matters he testified on cross-examination as follows:

"Q. He then asked you to strengthen it? A. Yes, sir, he did, and I did the best I could with the ropes I had.

"Q. You could not fix the center sling? A. No, sir, the rope was too short to get there.

"Q. Did you tell the defendant when you went down that the rope was too short to fix the center sling? A. Yes, sir, I told him.

"Q. When you returned to the defendant after fixing the two side slings, what did you say to him about the center sling, if anything? A. I told him I had strengthened the two end falls, and there was not enough rope to go to the center. He said, 'It was all right any way, without strengthening. It is all right.'

"Q. What instructions did he give you in regard to the use of the new rope which was brought there? Where did he tell you to use the new rope? A. He told me to place it when the staging came down, and to keep on rigging ahead.

"Q. He told you to place the new rope on the next staging? A. For the next staging so soon as it came down, to have it ready. . . .

"Q. And he told you that day that the next day he would send out all the ropes you wanted? A. Yes, sir; after the staging was lowered down.

"Q. And were there not a great many ropes delivered to the job the next day? A. Yes, sir; they were not intended for the first staging, but for the next.

"Q. You spoke of the first staging when you told the defendant there were no more ropes there? A. Yes, sir.

"Q. And he told you that the next day there would be a whole lot of ropes delivered? A. Yes.

"Q. As a matter of fact there were a whole lot of ropes delivered the next day? A. Yes, sir, plenty.

"Q. Three or four days before the accident? A. Yes, sir.

"Q. Did you do anything or take any of those ropes to strengthen that middle fall? A. There is no way of strengthening the ropes except to lower the staging to the ground and strengthen it and rig it over.

"Q. You were the foreman of the job there? A. Yes, sir.
"Q. Why did you not lower down the staging then and strengthen that fall? A. The defendant told me, 'You are my foreman; I am the boss.' He said, 'You go by my advice,' and I did."

As soon as the appellant arrived at the scene of the accident, and his foreman Peterson told him what had happened, the appellant said to him, "For Christ sake, go and hide the rope. Go up, Jake, for Christ sake, just as soon as you can."

It will be observed that the witness speaks of having failed to strengthen the middle *fall* because there was not enough rope on hand, while in fact it was not the fall but the sling that broke, but later on in his testimony he makes it somewhat plain that in saying "fall" he meant "sling."

We have carefully examined the alleged errors as to giving, refusing and modifying instructions, and find no occasion for discussing them in detail. The instructions, as a whole, gave the jury a full and fair statement of the law pertaining to every phase of the case.

The judgment and order are affirmed.

Hall, J., and Cooper, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 24, 1908.