CASEY-HEDGES CO. *v.* WALTER GATES.

(*Knoxville.* September Term, 1917.)

MASTER AND SERVANT. Fellow servants. Injuries to servant. De-
fective appliances.

Where cores are selected, inspected, and prepared by employees
of another department, without supervision except the general
supervision over both departments, a molder cannot recover for
injuries from loaded defective cores coming to him, especially
where he has an opportunity to inspect and select from the
cores prepared.

Cases cited and approved: Bridge Co. v. Grizzle, 119 Tenn., 683;
Morriss Bros. v. Bowers, 105 Tenn., 64; Bruce v. Beall, 99 Tenn.,
304; Guthrie v. Railroad, 79 Tenn., 372; Griffin v. Parker, 129
Tenn., 446; Haakensen v. Burgess Sulphite Fiber Co., 76 N. H.,
443; Leishman v. Union Iron Works, 148 Cal., 274; Beesley v.
Wheeler, 103 Mich., 196; Dougherty v. Milliken, 163 N. Y., 527;
Virginia Iron, etc., Co. v. Hamilton, 107 Tenn., 705; Coal Creek
Mining Co. v. Davis, 90 Tenn., 711; Kehoe v. Allen, 92 Mich., 464;
Colton v. Richards, 123 Mass., 484; Thompson v. Worcester, 184
Mass., 354; Hefferen v. Northern P. R. Co., 45 Minn., 471; Ross v.
Walker, 139 Pa., 42; Prescott v. Ball Engine Co., 176 Pa., 459.


                      FROM HAMILTON


Appeal from the Circuit of Hamilton County.—
NATHAN L. BACHMAN, Judge.

SIZER, CHAMBLISS & CHAMBLISS, for appellants.

TATUM, THACH & LYNCH, for appellee.

Mr. Justice Green delivered the opinion of the Court.

Walter Gates recovered a judgment for $1,500 against the Casey-Hedges Company for damages for personal injuries, which was affirmed by the court of civil appeals, and the case is before us on *certiorari* granted.

Gates was an experienced iron molder in the employ of the plaintiff in error, and the basis of his suit is alleged negligence of the plaintiff in error in furnishing him with defective appliances.

Plaintiff in error relies on his motion for a directed verdict, the disallowance of which he assigns as error in this court.

At the time he received his injuries the defendant in error was engaged in the casting of iron pipe. There was an explosion of the mold into which he and his assistant were pouring the melted iron, and by the force of the explosion this liquid was thrown onto the leg and foot of defendant in error, injuring him severely.

The mold for casting iron pipe comprises the lower part known as the "drag." The upper part of the mold is called the "cope." The cope fits upon the drag. Both are concave. In the cylinder thus formed the pipe is molded.

Within this mold before the liquid iron is poured therein is placed what is called the "core." This core is a tubular appliance whose outside circumfer-

ence is smaller that the inside circumference of the mold. When the metal is poured into the mold it forms around the core, and the hollow or interior of the pipe is thus made.

The core consists of an iron pipe called the arbor over which is spread a thin coating of damp sand. The arbor is perforated along its circumference, and each end of the arbor pipe is open. As molten iron cools it expels gases, and these gases escape through the sand covering the perforations into the arbor, and thus out either end of the arbor.

It is necessary to handle the cores with great care after they are prepared. If the sand drops from them, the melted iron will run through the perforations into the arbor, and the casting of pipe will be spoiled. Notwithstanding the care used in handling these cores, it frequently happens that some of the sand drops from them, and melted iron is thus allowed to run into the arbor. If sufficient iron runs into the arbor to stop it up, it then becomes what is called a "loaded arbor." If such an arbor is used in a core and then placed in a mold for the purpose of casting pipe, there will be no way for the gas from the melted iron to escape, and an explosion is likely to follow.

The testimony of Gates tends to show that the accident happened to him in the way just indicated; that a core was made with a loaded arbor, and that in making the particular cast after he and his assistant had poured the melted iron into the mold the end

of the arbor blew out, throwing the hot liquid upon his leg.

These cores are made, that is, the arbors are sand covered, by a machine, many of them each day in this foundry. There are a number of men engaged in this work, called "coremakers." They are not under the supervision of any particular superintendent or foreman. There is such an employee having general charge of all the workmen at the place.

The testimony of the defendant in error is that the molders were not supposed to inspect the interior of the cores furnished to them. Such cores were prepared as before stated and brought out to the molders on racks with several cores on each rack, and the molder had the selection. The molder would examine the outside of the core to see if they were properly covered with sand, but did not look at the ends to see if the interior of the arbors were obstructed or loaded.

It is insisted for the defendant in error that his injuries were caused by a defective core supplied to him, and that for these injuries thus inflicted his employer is liable.

The general rule, of course, is that an employer is bound to furnish to his employees safe appliances for the prosecution of their work. To this effect are all our cases. *Bridge Co.* v. *Grizzle*, 119 Tenn., 683, 109 S. W., 290; *Morriss Bros.* v. *Bowers*, 105 Tenn., 64, 58 S. W., 328; *Bruce* v. *Beall*, 99 Tenn.,

304, 41 S. W., 445; *Guthrie* v. *Railroad,* 79 Tenn. (11 Lea), 372, 47 Am. Rep., 286.

In all these cases, however, the master undertook to supply to his servants instrumentalities in a completed form, ready for use. As to such appliances the master is under obligation to furnish them in a safe condition.

The master may, however, delegate to his servants the duty of constructing their own instrumentalities of labor. In this event, if the instrumentalities are defectively constructed, such defect arises from the negligence of the servants themselves. If the master furnish suitable material for such construction and leaves the selection of the component parts and their adjustment to the discretion of the servants, unembarrassed by the supervision of any foreman or vice-principal, the master is not liable for an injury due to a defect in such construction or adjustment.

"If the master supplies suitable material for the construction of an appliance, which he is not obliged and has not undertaken to furnish in a completed state, and the workmen themselves construct it according to their own judgment, the master is not liable for the manner in which they used the materials thus supplied." 2 Labatt, Mas. & Ser. (1 Ed.) section 614.

"The obligation of an employer to furnish his employees with safe appliances and a safe place of work does not impose upon him the duty of supplying instrumentalities in a completed form. When under

the terms of a contract of employment the employees are required to construct an instrumentality, the employers' duty is discharged by furnishing suitable materials with which it may be constructed; and he is not liable for an injury due to a defect in its construction or adjustment." 18 R. C. L., p. 596.

The doctrine thus stated finds frequent application in scaffold cases. Where the master undertakes to furnish the scaffold as a completed structure, he is liable for an injury resulting from defective construction. If, however, he directs the servants to build their own scaffold for the prosecution of their work and furnishes them suitable materials and leaves them unembarrassed in their selection of such materials, without supervision of a foreman, then he is not liable for an accident resulting from defective construction. *Griffin* v. *Parker,* 129 Tenn., 446, 164 S. W., 1142, L. R. A., 1917F, 497; *Haakensen* v. *Burgess Sulphite Fiber Co.,* 76 N. H., 443, 83 Atl., 804, Ann. Cas., 1913B, 1122, and note, where all the cases are collected.

This rule is applied to instrumentalities other than scaffolds or staging in *Leishman* v. *Union Iron Works,* 148 Cal., 274, 83 Pac., 30, 3 L. R. A. (N. S.), 500, 113 Am. St. Rep., 243, which was a case of an iron molder very similar to this one. See, also, *Beesley* v. *Wheeler,* 103 Mich., 196, 61 N. W., 658, 27 L. R. A., 266; *Dougherty* v. *Milliken,* 163 N. Y., 527, 57 N. E., 757, 79 Am. St. Rep., 608.

So we think that under the rule just announced the plaintiff in error was not liable for injuries resulting from the defective construction of this core.

It is true that the coremakers worked in a separate department from the molders, but they were all engaged in the same common employment under common supervision. They were undoubtedly fellow servants, since the departmental rule has not been applied in this jurisdiction except to railroad companies. *Virginia Iron, etc., Co.* v. *Hamilton,* 107 Tenn., 705, 65 S. W., 401; *Coal Creek Mining Co.* v. *Davis,* 90 Tenn., 711, 18 S. W., 387.

It is contended, however, that the plaintiff in error was under obligations to inspect the arbor iron for defects before it was used in the making of the core, and that this duty of inspection was nondelegable.

While our cases heretofore referred to recognize a continuing duty of inspection on the part of the master with respect to certain instrumentalities, there are exceptions to this rule. It is said not to be the master's duty to look for and ''repair defects arising in the daily use of an appliance for which proper and suitable materials are supplied and which may be remedied by the workmen, and are not of a permanent character or requiring the help of skilled mechanics.'' 26 Cyc., 1138. It appears that it was the duty of the coremakers to examine the iron arbors to ascertain if these pipes were free from obstructions. Such obstructions were likely to occur in the use and plaintiff in error maintained a blacksmith

Casey-Hedges Co. v. Gates.

shop to which it was the duty of the coremakers to send these arbors if they needed cleaning out. They were likely to get loaded at any time, and the cleaning of them, in our opinion, was a mere detail of the service just as much as covering them with sand. To clean the arbors and to cover the arbors were alike incidents of construction of the cores.

In addition to this the coremakers were intrusted with the right of selection of the arbors which they used in making the cores. The greater part of the arbors returned to them from the molders would be clean and free from obstruction. That is to say, the master furnished to these coremakers an abundance of suitable material and left the selection to them. If under such circumstances they negligently selected defective material for use in making the cores, the master not undertaking any supervision of the work, such negligence was the negligence of fellow servants in the performance of their ordinary duties, for which the master is not liable in this suit of defendant in error.

The authorities abundantly sustain the proposition that a servant has no right to complain of the master's failure to inspect where safe tools, appliances, or materials are available, and the servant to whom the duty of selection is left makes a negligent choice.

This is undoubtedly true where the servants without supervision are undertaking from simple material to construct their own instrumentalities of labor. In such a case the selection is but part of the construc-

tion. To this effect is our own case of *Griffin* v. *Parker,* supra, also *Leishman* v. *Union Iron Works,* supra, and this is the extent of our ruling herein.

Many cases, however, hold this to be the rule as to completed instrumentalities or appliances ready for use, where a supply of safe tools and appliances is available, and the servant negligently selects improper and unsuitable instrumentalities. *Kehoe* v. *Allen,* 92 Mich., 464, 52 N. W., 740, 31 Am. St. Rep., 608; *Colton* v. *Richards,* 123 Mass., 484; *Thompson* v. *Worcester,* 184 Mass., 354, 68 N. E., 833; *Hefferen* v. *Northern P. R. Co.,* 45 Minn., 471, 48 N. W., 1, 526; *Ross* v. *Walker,* 139 Pa., 42, 21 Atl., 157, 159, 23 Am. St. Rep., 160; *Prescott* v. *Ball Engine Co.,* 176 Pa., 459, 35 Atl., 224, 53 Am. St. Rep., 683. See other cases collected in notes 1 L. R. A. (N. S.), 952. In some of these cases, though, the master might be exonerated on the simple-tool doctrine.

For the reasons indicated, we think that the motion for a directed verdict should have been sustained, and the judgment of the trial court and the court of civil appeals is accordingly reversed, and this suit dismissed.